Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Matthew D. Schultz (PHV Forthcoming)
mschultz@levinlaw.com
Brenton Goodman (PHV Forthcoming)
bgoodman@levinlaw.com
**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-6140

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS SUAREZ, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> PROTEIN ESSENTIALS, LLC, <br><br> Defendant. | Case No.: 2:20-cv-00914 <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR DAMAGES** <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Juan Carlos Suarez ("Plaintiff"), individually and on behalf of all others similarly situated ("the Class"), brings this Class Action Complaint against Defendant Protein Essentials, LLC ("Defendant") based upon Defendant's misrepresentations to consumers concerning its collagen peptide-based "Protein Essentials" products ("the Products").

## INTRODUCTION & BACKGROUND FACTS

1.   This is a class action on behalf of purchasers of the Products, based upon Defendant's inaccurate and misleading reporting—both in marketing and on the Products' labels—of the percent of the Daily Value ("% DV") of protein that the Products purportedly provide.

2.   Defendant's misrepresentations cost any given consumer relatively little

money; but Defendant has profited a few dollars at a time based upon its deceptive marketing of the Products.

3.  Although the Products come in three styles (see ¶ 5 below), each style is substantially similar to the others in form and in function and all are sold in substantially similar packages making substantively identical misrepresentations regarding the % DV of protein for the Products.

4.  The omissions and misrepresentations identified in this Complaint are substantively identical across all sizes and styles of the Products and the claims that give rise to this action are the same in all essential respects regardless of which style of the Products is considered. That is to say, all Product styles are substantially similar in all material respects and are deceptive in the same way.

5.  The deception is simple: Defendant claims on the Products' labels that a single serving of the Products provides just under 2% DV protein for each gram of protein (ranging up to 39% DV as labeled) when, in fact, the Products deliver 0% DV for protein no matter the amount consumed.[1]

> 5a. Unflavored Collagen Peptides reporting 26% DV (13g protein – 14g serving).




---

[1] Images sourced from https://proteinessentials.com/collections/all/Products/ (last visited 1/21/20) with superimposed shapes for emphasis.

1

| 5b. Chocolate Protein Shake reporting 39% DV (20g protein – 29.2g serving). |




| 5c. Mocha Protein Shake reporting 39% DV (20g protein – 30g serving). |




6.  Defendant sells Unflavored Collagen Peptides and Chocolate Protein Shake styles in "Go Packets" with labels that are substantively identical to the above, including the representations concerning % DV for protein.

7.   The Products are comprised primarily of beef hydrolyzed collagen (i.e., collagen from beef), with some additional flavorants in the chocolate and mocha styles.

8.   Collagen is a structural protein found in various connective tissues such as tendons, ligaments, and skin. It is comprised of amino acids bound together to form fibrils. Hydrolyzed collagen is another word for gelatin (also known as collagen hydrolysate and collagen peptides).

9.   Collagen in the Products is the only source of the protein and amino acids reported on the label.

10.   All collagen, including the collagen in the Products, lacks one of the nine essential amino acids (tryptophan); therefore, collagen does not provide a complete protein.

11.   Each of the Products' labels lists the amino acids found in the Product.

12.   None of the Products' labels reports containing tryptophan because none of the Products contain tryptophan.

13.   According to the Food and Drug Administration ("FDA") testing methodology for protein content and reporting of % DV, hydrolyzed collagen has a protein % DV of zero because it is an incomplete protein.

14.   If the Products' labeling reflected measurements made in accordance with federal regulations governing the federally-mandated nutrition panel (aka the "Supplement Facts" panel), the Products would list the % DV for protein as zero (or would leave the value blank).

15.   Defendant's label claim violates federal and parallel state regulations regarding label claims for % DV.

16.   Defendant's label claim is false and misleading.

17.   Protein supplementation is the primary reason consumers purchase collagen peptide products including the Products at issue in this action.

18.  Because protein supplementation is the primary reason consumers purchase collagen peptide products, reasonable consumers of protein supplement products like the Products at issue here are acutely aware of the amount of protein and the reported % DV for protein on product labels and protein content is an important distinguishing factor between competitive products.

19.  Reasonable consumers routinely choose one product over another similar product based in whole or in part on products' label claims.

20.  Reporting a % DV of zero (or leaving the value blank) not only is accurate but is feasible as demonstrated by the fact that Defendant's competitors do so.[2,3,4]

> 20a. Competitors' Labels Showing No % DV for Protein

 

---

[2] Sports Research Collagen Peptides (Hydrolyzed Type I and III Collagen): https://www.vitaminshoppe.com/p/collagen-peptidess-16-oz-powder/sc-1103 (yellow highlighting added).

[3] Vitamin Shoppe Collagen Peptides Powder (Hydrolyzed Type I and III Collagen): https://www.vitaminshoppe.com/p/collagen-peptidess-powder-7-oz-powder/vs-4122?mr:trackingCode=D8188796-0DBA-E911-8102-00505694403D&mr:referralID=NA&sourceType=sc&source=SHOP&acqsource=adlucent&utm_source=Shopping&utm_medium=CSE&utm_campaign=The%20Vitamin%20Shoppe&utm_content=VS-4122&adlpxid=pla;299328552456;2830555 89310;c;9011657;placeholder;2145605;pla;local;383&gclid=EAIaIQobChMItq-Yo-u05AIVBI3ICh3wvQlREAQYASABEgJGuPD_BwE (yellow highlighting added).

[4] Vital Proteins Collagen Peptides: https://www.amazon.com/ Vital-Proteins-Collagen-Peptidess-Pasture-Raised/dp/B00K6JUG4K?th=1 (yellow highlighting added).

21. Defendant's misrepresentations have damaged Plaintiff and the Class and require restitution and injunctive relief to address past, present, and future harm. Damages not only would make Defendant's customers whole, but would ensure that Defendant does not reap unwarranted economic gain through misleading marketing and label claims, which either disadvantages competitors who play by the rules or incentivizes them to break the law in order to compete in the marketplace.

## PARTIES

22. Plaintiff is and was at all relevant times a citizen and domiciliary of Woodland Hills, California, which is located in this District and Division.

23. Defendant Protein Essentials, LLC, is an Illinois for-profit limited liability company with its principal place of business, in Libertyville, Illinois.

24. On information and belief, none of the Defendant LLC's members is a citizen of the State of California,

25. Defendant is a citizen of the State of Illinois.

26. Defendant may be served with process through its registered agent: John Pierpont III, 1840 Industrial Dr., Suite 120, Libertyville, Illinois 60048.

## JURISDICTION AND VENUE

**Subject Matter Jurisdiction.**

27. This Court has original subject matter jurisdiction over this action pursuant

to CAFA, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the *United States Code*), under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of Plaintiffs is a citizen of a State different from any Defendant." 28 U.S.C. § 1332(d)(2)(A).

28. Plaintiff is diverse from Defendant and Plaintiff seeks to represent other Class members, some of whom are diverse from Defendant.

29. The matter in controversy exceeds $5,000,000.00 in the aggregate, exclusive of interest and costs and "the number of members of all proposed Plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

**Personal Jurisdiction.**

30. This Court has specific personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

31. Defendant conducts substantial business in this District.

32. Defendant knowingly directed the Products through the stream of commerce into this District.

33. Defendant has marketed the Products within this District through the wires and mails, and via its own e-commerce website[5] and third-party e-commerce websites through which residents of this District have purchased the Products.[6]

34. Defendant knowingly directs electronic activity and ships the Products into this District with the intent to engage in business interactions and it has in fact

---

[5] Protein Essentials, https://proteinessentials.com/collections/all (last visited 1/21/20).
[6] For example, Defendant maintains a dedicated page at Amazon.com where the Products can be purchased: https://www.amazon.com/stores/node/19150414011?_encoding=UTF8&field-lbr_brands_browse-bin=Protein%20Essentials&ref_=bl_dp_s_web_19150414011 (last visited 1/21/20).

1   engaged in such interactions, including the resulting sale of the Products to Plaintiff

2   and others.

3   35. Plaintiff's losses and those of other Class members occurred in this District.

4   **Venue.**

5   36. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial

6   part of the events or omissions giving rise to Plaintiff's claims occurred within this

7   District.

8   37. Defendant caused the Products to be offered for sale and sold to the public,

9   including Plaintiff, in this District. Plaintiff purchased the Products in this District

10  and incurred his losses in this District. Likewise, other Class members purchased the

11  Products and incurred losses in this District.

12  38. Venue is proper pursuant to 28 U.S.C. § 1391(c)(2) because Defendant is an

13  entity with the capacity to sue and be sued in its common name and this Court

14  maintains personal jurisdiction over Defendant in this action.

15  **ADDITIONAL FACTUAL ALLEGATIONS**

16  **Federal Legal Requirements & Defendant's Misrepresentations.**

17  39. Protein is comprised of amino acids, which are linked to one another in long

18  chains. The sequence of amino acids determines each protein's unique structure and

19  its specific function.

20  40. Amino acids are organic compounds that combine to form proteins. The nine

21  "essential" amino acids are those that the human body cannot produce on its own and

22  therefore must come from food or supplements.

23  41. Not all dietary proteins are the same, as they are made up of different

24  combinations of either essential or non-essential amino acids.

25  42. A "complete protein" contains all nine essential amino acids. An incomplete

26

27

28

protein" does not. The nine essential amino acids for adults are: histidine, isoleucine, leucine, lysine, methionine, phenylalanine, threonine, tryptophan, and valine.[7]

43. Defendant makes protein claims on the Products' labeling and in marketing the Products. For example:

43a. All of the Product labels except the Go Packets (which are smaller) state: "Collagen is an essential protein in our bodies that strengthens our bones and keeps our skin healthy."[8]

43b. All of the Product labels except the Go Packets (which are smaller) encourage consumers to begin using the product today: "Your joints, skin, hair & bones will thank you."[9]

43c. Both the Unflavored Collagen Peptides and Chocolate Protein Shake Go Packets packaging states on the front: "revitalize hair & nails; strengthen joints; nourish skin" and on the side: "Feel the benefits … healthy skin, hair, nails; improves joint function; reduces joint pain; stronger bones" while the label states: "beautiful skin; stronger bones; joint health."

43d. Defendant's website claims: "Collagen is an essential protein in our bodies that strengthens our bones and keeps our skin healthy"[10] while also stating: "PE Collagen offers multiple proven benefits in key areas including; hair, skin & nails, bones, joints & muscles … It's a Superfood."[11]

---

[7] *Nutrient Facts Label: Protein*, U.S. FOOD AND DRUG ADMINISTRATION, available at https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/factsheets/Protein.pdf.
[8] https://proteinessentials.com/collections/collagen-peptides/products/hydrolyzed-collagen-peptides-unflavored-2lb (last visited 1/21/20) (emphasis in original).
[9] *Id.*
[10] https://proteinessentials.com/collections/all/products/collagen-peptides-chocolate-go-packets-20-packets (Chocolate Protein Shake Go Packets) and https://proteinessentials.com/collections/ all/products/collagen-peptides-unflavored-20-go-packets (Unflavored Collagen Peptides Go Packets) (last visited 1/21/20).
[11] https://proteinessentials.com/collections/all/products/hydrolyzed-collagen-peptides-unflavored-2lb (last visited 1/21/20).

43e.  Defendant's online "FAQ" includes similar protein claims: "Q. What is Collagen? Protein Essentials Hydrolyzed Collagen Peptides are a unique, readily absorbed protein that offer proven benefits for health, aging, joint and bone health, skin beauty and sports nutrition."[12]

43f.  Marketing claims include touting the Products as "a proactive approach to maintain a healthy, active lifestyle."[13]

43g.  Defendant claims the Products "contain a unique combination of 18 key amino acids and offer exception nutritional properties not found in other protein sources."[14]

43h.  Defendant's "blog" makes even stronger protein claims such as reducing wrinkles and pore visibility:[15]



---

[12] https://proteinessentials.com/pages/faq (last visited 1/21/20).
[13] *About Us*, Protein Essentials, https://proteinessentials.com/pages/about-us (last visited 1/21/20).
[14] Product Details, Protein Essentials https://proteinessentials.com/pages/product-details (last visited 1/21/20).
[15] https://proteinessentials.com/blogs/protein-essentials-blog (last visited 1/21/20).

44. Indeed, the brand name itself—Protein Essentials—is a protein claim that implies the Products deliver complete proteins and essential amino acids.

45. However, Protein Essentials does not contain complete proteins and it lacks tryptophan, an essential amino acid.

46. When the seller of a dietary supplement makes protein claims such as those made by Defendant, the % DV for protein is required on the product label.[16]

47. To determine the % DV for protein within a product, the seller is required under the Food, Drug, and Cosmetic Act ("FDCA") and FDA's implementing regulations to test in accordance with the Protein Digestibility-Corrected Amino Acid Score ("PDCAAS").[17]

48. The PDCAAS is the preferred method for the measurement of the protein value in human nutrition and has been adopted by the Food and Agriculture Organization of the United Nations, the World Health Organization, and the FDA.

49. Federal law requires Defendant to report the % DV for protein using the PDCAAS.[18]

50. The PDCAAS measures protein quality based on human *essential* amino acid requirements and the human body's ability to digest those amino acids. An amino acid is classified as being "essential" if the human body cannot manufacture the amino acid itself, but instead relies upon the consumption of the amino acid through an individual's diet.

---

[16] *Guidance for Industry: A Food Labeling Guide (7. Nutrition Labeling; Questions G I through P8)*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/media/81606/download at 30.

[17] *Nutrition labeling of food*, 21 C.F.R. § 101.9(j)(6) (requiring dietary supplements to be labeled in compliance with 21 C.F.R. § 101.36); *Nutrition labeling of dietary supplements*, 21 C.F.R. § 101.36(b)(2)(iii) (requiring listing of the percent of the Daily Value of protein as calculated according to 21 C.F.R. § 101.9(c)(7)(ii)); *Nutrition labeling of food*, 21 C.F.R. § 101.9(c)(7)(ii) (requiring the "corrected amount of protein (gram) per serving" to be calculated by multiplying the actual amount of protein by amino acid score corrected for protein digestibility (i.e., the PDCAAS)).

[18] *Id.*

51. Tryptophan, commonly associated with turkey meat, is an essential amino acid used by the human body to create serotonin, melatonin, and vitamin B6. However, collagen products, including the Products at issue here, lack tryptophan.

52. The PDCAAS compares protein to a standard amino acid profile and rates the protein a score from 0.0–1.0. A score of 1.0 indicates maximum amino acid digestibility and 0.0 means that the protein is not digestible or lacks essential amino acids that provide the human body with the benefits associated with protein. By way of example, common protein supplements (whey, casein, and soy) all receive 1.0 scores. Meat and soybeans (0.9), vegetables and other legumes (0.7), and whole wheat and peanuts (0.25-0.55) all provide diminished protein digestibility.

53. To determine the % DV of protein, the amount of total protein grams within a product is calculated by multiplying the PDCAAS score by the proteins per serving. (Protein grams = [protein per serving x PDCAAS]). Then the total of protein grams is divided by 50, and then multiplied by 100 (i.e., % DV = [(Protein grams / 50) x 100]).

54. For example, in determining the % DV for soybeans within a product containing 3 grams per serving, the protein grams would be [3g x PDCAAS of 0.9], which is 2.7. Then [(2.7 protein grams/50) x 100], which results in a % DV of 5.4%.

55. PDCAAS is used to ensure that consumers are informed about the actual "quality" of protein within a product, and the amount of essential amino acids the consumer is actually receiving from a product.

56. Protein Essentials claims on the Products' label that each serving provides approximately 2% DV for protein per gram of protein in the Product.

57. However, all of the Products have a PDCAAS of zero because they are incomplete proteins due to their lack of the essential amino acid tryptophan.

58. Assuming a one-gram serving of any of the Products, the total protein grams of the Products would be zero (1g x PDCAAS of 0). Therefore, the % DV [(0 protein grams/50) x 100] also is zero. In other words, it is impossible for the Products to

provide above 0% DV for protein because the initial numerator in the equation is always zero (because the Products are missing an essential amino acid, yielding a PDCAAS of zero).

59. Defendant either failed to comply with the methods of testing required in sections 5.4.1, 7.2.1, and 8.00 in "Protein Quality Evaluation, Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation," Rome, 1990, as required by 21 C.F.R. § 101.9(c)(7)(ii), or Defendant complied with the methods and intentionally misreports the % DV for protein in the Products.

60. Reporting a % DV of zero (or a blank, as illustrated in competitive product labels above in ¶ 20a.) would not result in a product label that is inconsistent with federal requirements for the labeling of dietary supplements; indeed, the label would conform to federal requirements.

61. Neither an award of damages nor the injunctive relief sought in this action would serve as an obstacle to the accomplishment and execution of applicable federal requirements.

62. To the extent Defendant does not manufacture, label, package, market, distribute, or sell the Products, it delegates such activities to third parties and maintains the ability to direct and control such activities and approves or ratifies all such activities.

63. Defendant has a duty independent of any activities carried out by third parties to ensure that the Products' marketing claims and packaging and labels are not misleading or deceptive and to ensure that the packaging and labels conform to federal regulatory requirements.

64. Defendant has final approval authority over marketing representations concerning the Products, final approval authority over the appearance and content of the Products' labels, and the ability to change such representations and labeling should it so choose.

65. At all relevant times Defendant omitted and continues to omit material information regarding the Products, including the failure to communicate to consumers that "*Protein* Essentials" does not contain whole proteins and the failure to communicate to customers that "Protein *Essentials*" lacks one or more essential amino acids, including tryptophan.

66. At all relevant times Defendant omitted and continues to omit material information regarding the Products including the failure to communicate to consumers that the Products deliver 0% DV for protein.

67. At all relevant times Defendant made and continues to make affirmative and material misrepresentations regarding the Products, including the fact that Defendant manufactured, labeled, packaged, marketed, distributed, and sold its Products to Plaintiff and other consumers with the false label representation that the Products provides a specific % DV for protein above zero when, in fact, the Products all deliver 0 % DV for protein while also omitting from the label this material fact.

**Plaintiff's Purchase of the Products & Resulting Harm.**

68. On November 13, 2019, Plaintiff purchased Defendant's Protein Essentials Collagen Peptides Powder online at a cost of $26.27 after tax.

69. The Product Plaintiff purchased included the label claims described above, including the 26% DV for protein claim.

70. At the time Plaintiff purchased the Products, Plaintiff relied upon the representations made on the Product label concerning the amount of protein and the 26% DV per serving, and Plaintiff reasonably believed the Product would provide this amount of protein and % DV for protein per serving, which is a benefit Defendant claimed Plaintiff would derive from purchase of the Product.

71. Plaintiff further relied upon Defendant's similar representations on Amazon.com in purchasing the Product.

72. Defendant is responsible for the accuracy of information conveyed on the Products' labels.

73. Because the Product lacks a key essential amino acid, it is incapable of providing the benefits represented in Defendant's marketing claims and as stated on the Products' labels.

74. Defendant knew, or in the exercise of reasonable care, should have known, that the Products' labels and its marketing claims were false and misleading.

75. Defendant knew, or in the exercise of reasonable care, should have known, that the Products' labels and its marketing omitted material information, including the information identified above.

76. Defendant intended for consumers to rely upon its representations concerning the % DV for protein the Products purportedly provide.

77. It would be reasonable for consumers to rely—as Plaintiff did—upon Defendant's representations concerning the % DV for protein the Products provide and to believe—as Plaintiff did—that the Products provide the stated amount of protein and % DV for protein claimed.

78. Defendant's representations concerning the % DV for protein were made with the intent to generate and increase sales of the Products.

79. By representing the % DV for protein the Products purportedly provide, and by omitting material facts concerning the % DV the Products actually provide, Defendant represented the Product's value to Plaintiff and to other consumers.

80. Because Defendant's representations and omissions are false and misleading, Plaintiff and other consumers received Products of different and substantially lesser value—ones with a higher effective cost—than Defendant represented.

81. Accordingly, Plaintiff and the Class did not realize the benefit of the bargain in purchasing the Products and their expectations were not met.

82. In addition, Plaintiff and the Class paid substantially more than the market value represented by the bargained-for price. Plaintiff and the Class bargained with Defendant on a particular market value for Products purporting to provide a stated 26% DV for protein (in Plaintiff's purchase) or other % DV; but because the Products uniformly provide 0% DV for protein, Plaintiff and the Class effectively paid a higher price than that reflected in the market price to which they and Defendant had agreed, and they received Products of lesser value than Defendant promised.

83. For these reasons, the Products are worth less than Plaintiff and the Class paid for them.

84. Thus, through the use of misleading representations and omissions as to the quality and benefits of the Products—and thereby the Products' value—Defendant obtained enhanced negotiating leverage allowing it to command a price Plaintiff and the Class would not have paid had they been fully informed and not misled.

85. The Products' costs would have been lower absent the false and misleading representations and omissions.

86. Absent the false and misleading representations and omissions, reasonable consumers, including Plaintiff and the Class, would only have been willing to pay less for the Products or they would have purchased other Products instead.

87. By use of its misleading marketing and labeling, Defendant created increased market demand for the Products and increased its market share relative to what its demand and share would have been had Defendant marketed and labeled the Products truthfully and accurately.

88. Plaintiff and the Class lost money as a result of Defendant's omissions and misrepresentations in that Plaintiff and the Class did not receive what they reasonably believed they were paying for based upon the omissions and misrepresentations.

89. Plaintiff and the Class detrimentally altered their position and suffered damages as a result of Defendant's omissions and misrepresentations.

90. Had Plaintiff and the Class been aware that the Products did not contain the reported % DV for protein, or any % DV for protein, Plaintiff would have paid less for it, or would have purchased different products. In other words, Plaintiff would not have purchased the Products at the price paid but for the Defendant's omissions and misrepresentations.

91. As a result of Defendant's false and misleading statements and failure to disclose (or adequately disclose) the actual % DV for protein provided by the Products, Plaintiff and the Class have suffered, and continue to suffer, injury-in-fact.

92. This action seeks, among other things, equitable and injunctive relief, restitution of all amounts illegally obtained, and disgorgement of any and all ill-gotten gains as a result of the misconduct described herein.

<strong>CLASS ACTION ALLEGATIONS</strong>

93. Plaintiff brings this action on behalf of a proposed class and subclass defined as follows (referred to throughout separately and collectively as "the Class"):

> **The National Class.** All persons within the United States who purchased the Products within five years prior to the filing of this Complaint.

> **The California Subclass.** All persons within the State of California who purchased the Products within four years prior to the filing of this Complaint.

94. Excluded from the National Class are: (a) Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person who timely and properly excludes himself or herself from the Class.

95. Plaintiff reserves the right to alter the Class definitions as necessary at any time to the full extent permitted by applicable law.

96. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

97. **Numerosity – Rule 23(a)(1):** The size of the Class is so large that joinder of all Class members is not practicable. Plaintiff believes and avers there are tens of thousands of Class members geographically dispersed throughout the United States.

98. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3):** There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions/issues include but are not limited to:

a. the composition, protein content and % DV of protein provided by the Products;

b. whether Defendant properly calculated the % DV of protein for the Products;

c. whether Defendant accurately reported its calculation of the % DV of protein for the Products;

d. what representations and omissions Defendant made regarding the % DV of protein for the Products;

e. whether Defendant intended for consumers to rely upon its representations regarding the % DV of protein for the Products;

f. whether Defendant's representations and omissions regarding the % DV of protein for the Products were material to reasonable consumers;

g. whether reasonable consumers would believe and rely upon Defendant's representations regarding the % DV of protein for the Products;

h. whether Defendant knew or should have known its representations and

1    omissions were misleading in light of a–g. above;

2    i.   whether Defendant's conduct was reasonable under the circumstances and

3         whether it constitutes deceptive and unfair trade practices;

4    j.   the proper amount of damages and disgorgement or restitution;

5    k.   the proper scope of injunctive relief;

6    l.   the proper amount of attorneys' fees.

7    99. Defendant's conduct contravened the laws Plaintiff seeks to enforce

8    individually and on behalf of the Class. Similar or identical violations, business

9    practices, and injuries are involved. Individual questions, if any, pale by comparison,

10   both in quality and quantity, to the numerous common questions that predominate

11   this action. The common questions will yield common answers that will substantially

12   advance the resolution of the case.

13   100.  In short, these common questions of fact and law predominate over

14   questions that affect only individual Class members.

15   101.  **Typicality – Rule 23(a)(3):** Plaintiff's claims are typical of the claims of the

16   Class members because they are based on the same underlying facts, events, and

17   circumstances relating to Defendant's conduct. Specifically, all Class members,

18   including Plaintiff, were harmed in the same way due to Defendant's uniform

19   misconduct described herein; all Class members suffered similar economic injury due

20   to Defendant's misconduct; and Plaintiff seeks the same relief as the Class members.

21   102.  There are no defenses available to Defendant that are unique to the named

22   Plaintiff.

23   103.  **Adequacy of Representation – Rule 23(a)(4):** Plaintiff is a fair and adequate

24   representative of the Class because Plaintiff's interests do not conflict with the Class

25   members' interests. Plaintiff will prosecute this action vigorously and is highly

26   motivated to seek redress against Defendant. Furthermore, Plaintiff has selected

27   competent counsel who are experienced in class action and other complex litigation.

28

Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class, and they have the resources to do so.

104. **Superiority – Rule 23(b)(3):** The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's misconduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them and they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single court;

c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

105. Unless the Class and Subclass are certified, Defendant will wrongfully retain monies received as a result of its unlawful and deceptive conduct.

106. Unless a class-wide injunction is issued, Defendant will likely continue to, or allow its resellers to, advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and

members of the Class will continue to be misled, harmed, and denied their rights under the law.

107. **Ascertainability.** To the extent ascertainability may be required, the Class members are readily ascertainable from Defendant's records and/or Defendant's agent's records of retail and online sales, as well as through public notice.

108. Defendant has acted on grounds applicable to the Class as a whole so that final injunctive and declaratory relief concerning the Class as a whole are appropriate.

109. Plaintiff suffers threat of future harm because he is unable to rely on Defendant's representations regarding the effectiveness of its Products in making future purchase decisions. Likewise, because Defendant has made such representations with impunity thus far, Plaintiff's ability to discern truthful from untruthful claims made with respect to competitors' supplement products is impaired. Injunctive relief requiring Defendant to make only truthful statements in its advertising would remedy these harms (specifically, as to Protein Essentials products, and normatively, as to competitors' products).

## <u>COUNT 1</u>

### VIOLATION OF VARIOUS STATE LAWS PROHIBITING
### UNFAIR & DECEPTIVE TRADE PRACTICES
### (On Behalf of the National Class & California Subclass)

110. Plaintiff realleges and incorporates by reference ¶¶ 1-109.

111. Plaintiff's claims are materially identical to claims available to Class members under the laws of the 50 states and Washington, D.C., which are amenable to further subclass treatment.

112. Plaintiff accordingly brings this claim for deceptive acts and practices in violation of various states' consumer protection statutes against Defendant on behalf of the Class.

113.   Defendant has engaged in deceptive acts and unfair practices as described in this Complaint and those acts and practices have caused actual damage to Plaintiff and the Class, as described herein.

114.   Defendant's deceptive and unfair trade practices have been carried out in the course of conducting Defendant's business, trade and commerce.

115.   Defendant's acts—including its efforts to mislead consumers regarding the % DV of protein for the Products—are willful, unfair, unconscionable, deceptive, contrary to public policy and injurious to consumers.

116.   Defendant's acts and practices—including its false, deceptive, and misleading representations and omissions in the marketing and labeling of the Products—would be and were material to any reasonable consumer's decision whether to buy the Products.

117.   Any objectively reasonable consumer acting reasonably in the circumstances would have been deceived and misled by Defendant's acts and practices including its false, deceptive, and misleading representations and omissions in the marketing and labeling of the Products.

118.   Defendant's acts and practices are unconscionable and actuated by bad faith, lack of fair dealing, actual malice, are accompanied by a wanton and willful disregard for consumers' well-being, and are motivated solely by the desire for financial gain.

119.   As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and the Class have sustained actual damages including but not limited to those described in ¶¶ 79-92 above.

120.   Plaintiff and the Class demand damages, attorneys' fees and costs, and any other equitable and legal relief to which they may be entitled.

121.   This Count is brought pursuant to laws that include, but are not necessarily limited to: Ala. Code § 8-19-1 *et seq.*; Alaska Stat. § 45.50.471 *et seq.*; Ariz. Rev. Stat.

Ann. § 44-1521 *et seq.*; Ark. Code Ann. § 4-88-101 *et seq.*; Cal. Civil Code § 1750 *et seq.* and Cal. Bus. & Prof. Code § 17200 *et seq.* & 17500 *et seq.*; Colo. Rev. Stat. § 6-1-101 *et seq.*; Conn. Gen. Stat. § 42-110a *et seq.*; Del. Code Ann. tit. 6 § 2511 *et seq.* & 2580 *et seq.*; D.C. Code Ann. § 28-3901 *et seq.*; Fla. Stat. § 501.201 *et seq.*; Ga. Code Ann. § 10-1-390 *et seq.*; Haw. Rev. Stat. § 480-1 *et seq.*; Idaho Code Ann. § 48-601 *et seq.*; 815 Ill. Comp. Stat. 505/1 *et seq.*; Ind. Code Ann. § 24-5-0.5-1 *et seq.*; Iowa Code § 714.16 *et seq.*; Kan. Stat. Ann. § 50-623 *et seq.*; Ky. Rev. Stat. Ann. § 367.110 *et seq.*; La. Rev. Stat. Ann. § 51:1401 *et seq.*; Me. Rev. Stat. Ann tit. 5, § 205-A *et seq.*; Md. Code Ann., Com. Law § 13-101 *et seq.*; Mass. Gen. Laws ch. 93A, § 1 *et seq.*; Mich. Comp. Laws § 445.901 *et seq.*; Minn. Stat. § 831 and § 325F.67 *et seq.*; Miss. Code Ann. § 75-24-1 *et seq.*; Mo. Ann. Stat. § 407.010 *et seq.*; Mont. Code Ann. § 30-14-101 *et seq.*; Neb. Rev. Stat. Ann. § 59-1601 *et seq.*; Nev. Rev. Stat. Ann. § 598.0903 *et seq.*; N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*; N.J. Stat. Ann. § 56:8-1 *et seq.*; N.M. Stat. § 57-12-1 *et seq.*; N.Y. Gen. Bus. Law § 349 *et seq.* and § 350 *et seq.*; N.C. Gen. Stat. § 75-1.1 *et seq.*; N.D. Cent. Code § 51-12-01 *et seq.* and § 51-15-01 *et seq.*; Ohio Rev. Code Ann. § 1345.01 *et seq.*; Okla. Stat. tit. 15, § 751 *et seq.*; Or. Rev. Stat. § 646.605 *et seq.*; 73 Pa. Stat. Ann. §§ 201-1 *et seq.*; R.I. Gen. Laws §§ 6-13.1-1 *et seq.*; S.C. Code Ann. § 39-5-10 *et seq.*; S.D. Codified Laws § 37-24-1 *et seq.*; Tenn. Code Ann. § 47-18-1091 *et seq.*; Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*; Utah Code Ann. § 13-11-1 *et seq.*; Vt. Stat. Ann. tit. 9, § 2451 *et seq.*; Va. Code Ann. §§ 59.1-196 *et seq.*; Wash Rev. Code § 19.86.010 *et seq.*; W. Va. Code § 46A-6-101 *et seq.*; Wis. Stat. § 100.18 *et seq.*; and Wyo. Stat. Ann. §§ 40-12-101 *et seq.*

122. Defendant's deceptive and unfair acts and practices are ongoing and may be expected to continue into the future absent relief.

123. Plaintiff, individually and on behalf of the Class, seeks:

a. a declaration or declaratory judgment that Defendant's acts and practices have violated and continue to the laws of the various states;

b.   an order enjoining Defendant to refrain from the acts and practices that have violated and continue to violate the deceptive and unfair trade practices acts of the various states, including an order requiring Defendant to cease claiming in its marketing and labeling of the Products that the Products provides any % DV for protein;

c.   actual damages;

d.   attorney's fees and court costs; and

e.   any other legal or equitable relief to which Plaintiff or the Class members may be entitled.

## <u>COUNT 2</u>

**UNJUST ENRICHMENT**
**(On Behalf of the National Class & California Subclass)**

124.  Plaintiff realleges and incorporates by reference ¶¶ 1-109.

125.  The law of the 50 states and Washington, D.C., does not differ materially as to the elements of unjust enrichment (aka quasi contract).

126.  Defendant, through its marketing and labeling of the Products, deceived Plaintiff and the Class regarding the % DV of protein for the Products.

127.  Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

128.  Plaintiff and the Class conferred a benefit on Defendant by purchasing the Products, including an effective premium, above the true value of the Products.

129.  Defendant appreciated, accepted, and retained this benefit to the detriment of Plaintiff and the Class.

130.  Defendant continues to possess monies paid by Plaintiff and the Class to which Defendant is not entitled.

131.   Under the circumstances it would be inequitable and unjust for Defendant to retain the benefit conferred upon it and its retention of the benefit violates fundamental principles of justice, equity, and good conscience.

132.   Plaintiff, individually and on behalf of the Class, seeks disgorgement of Defendant's ill-gotten gains. Plaintiff and the Class seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the finder of fact, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## COUNT 3

**VIOLATIONS OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**
**(On Behalf of the California Subclass)**

133.   Plaintiff realleges and incorporates by reference ¶¶ 1-109.

134.   The CLRA prohibits deceptive practices by any business that provides goods, property, or services primarily for personal, family, or household purposes.

135.   Plaintiff and the Class members are "consumers" as defined in California Civil Code § 1761(d).

136.   The Products are "goods" as defined in California Civil Code § 1761(a).

137.   Defendant is a "person" as defined in California Civil Code § 1761(c).

138.   Plaintiff and the Class members' purchases of the Products are "transactions" as defined in California Civil Code § 1761(e).

139.   Defendant's representations and omissions concerning the quality, benefits and effectiveness of the Products were false and/or misleading as alleged herein.

140.   Defendant's false or misleading representations and omissions were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

141.   Defendant's false and misleading representations and omissions were made to the entire Class.

142.  Defendant knew or should have known that its representations and omissions were material and were likely to mislead consumers, including Plaintiff and the Class.

143.  Defendant's practices, acts, and course of conduct in marketing and selling the Products were and remain likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

144.  Defendant's false and misleading representations and omissions were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class members, and violated and continue to violate the following sections of the CLRA:

    a.  § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b.  § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c.  § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d.  § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it was not.

145.  Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.'

146.  Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

147.  Defendant's wrongful business practices were a direct and proximate cause of actual harm to Plaintiff and to each Class member.

148.  Pursuant to Cal. Civ. Code § 1782(a), Plaintiff provided notice to Defendant of its alleged CLRA violations, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. Notice was sent via certified mail, return receipt requested on January 27, 2020.

1    Plaintiff may seek leave to amend this Complaint at the appropriate time to seek

2    monetary relief, including restitution and actual damages, pursuant to the CLRA.

3         149.  Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief,

4    reasonable attorneys' fees and costs, and any other relief in law or equity that the

5    Court deems proper.

6                                   **COUNT 4**

7              **VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW**

8                    **(On Behalf of the California Subclass)**

9         150.  Plaintiff realleges and incorporates by reference ¶¶ 1-109.

10        151.  The FAL provides that "[i]t is unlawful for any person, firm, corporation or

11   association, or any employee thereof with intent directly or indirectly to dispose of

12   real or Personal property or to perform services" to disseminate any statement

13   "which is untrue or misleading, and which is known, or which by the exercise of

14   reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code

15   § 17500.

16        152.  It also is unlawful under the FAL to make or disseminate any

17   advertisement that is "untrue or misleading, and which is known, or which by the

18   exercise of reasonable care should be known, to be untrue or misleading." *Id.*

19        153.  As alleged herein, the advertisements, labeling, policies, acts, and practices

20   of Defendant relating to the Products were and are deceptive and misleading and

21   misled consumers acting reasonably as to Defendant's representations about the

22   quality, benefits, and effectiveness of the Products.

23        154.  Plaintiff and the Class members suffered injury-in-fact as a result of

24   Defendant's actions as set forth herein because, as reasonable consumers, they

25   purchased the Products in reliance on Defendant's false and misleading labeling

26   claims concerning the Products' quality, benefits, and effectiveness and thereby

27   suffered losses including the losses described in ¶¶ 79-92 above.

28

155.  Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and because Defendant omitted material information from its advertising and labeling.

156.  Defendant profited from sale of the falsely and deceptively advertised Products to reasonable but unwary consumers including Plaintiff and the Class and Defendant has thereby been unjustly enriched.

157.  As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

158.  Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint, as well as restitution and any other available equitable relief.

## COUNT 5
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
#### (On Behalf of the California Subclass)

159.  Plaintiff realleges and incorporates by reference ¶¶ 1-109.

160.  Defendant has engaged in deceptive acts and unfair practices that have caused actual damages to Plaintiff and the Class.

161.  California Business and Professions Code § 17206 provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition shall be liable . . ." for damages caused thereby.

162.  Section 17200 of the Business and Professions Code defines unfair competition as "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising..."

163.  Defendant is a person as defined by the § 17201 because Defendant is a company.

164.  In the course of its conduct, Defendant violated § 17200 *et seq.* by engaging in the deceptive acts and unfair practices described above and incorporated into this count, which offend established public policy, are substantially injurious to consumers, and are unscrupulous, oppressive, unethical, or immoral.

165.  Defendant's mischaracterization of the % DV for protein in its marketing and labeling of the Products constitutes a representation, omission, and practice that is likely to mislead reasonable consumers and which, in fact, did mislead reasonable consumers including Plaintiff and the Class members, thereby causing them loss including the losses described in ¶¶ 79-92 above.

166.  An objectively reasonable person would have been deceived by Defendant's representations, omissions, and practices.

167.  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they have the capacity to deceive reasonable consumers, including Plaintiff and the Class, as to the benefits and effectiveness of the Products.

168.  **Unlawful**: The acts alleged herein are "unlawful" under the UCL in that they violate at least (a) the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; (b) and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

169.  **Unfair**: The acts alleged herein are "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims, including Plaintiff and the Class.

170.  The acts alleged herein also are unfair because they violate public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the False Advertising Law and Consumers Legal Remedies Act.

171.  The acts alleged herein are unfair because the consumer injury was substantial, was not outweighed by benefits to consumers or competition, and was not one consumers could reasonably have avoided.

172.  Reasonable consumers, including Plaintiff and the Class members, purchased the Products believing they were beneficial and effective as claimed by Defendant when in fact they were not—a fact of which consumers could not reasonably have become aware.

173.  **Fraudulent**: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

174.  The acts alleged herein, including Defendant's representations and omissions about the quality, benefits, and effectiveness of the Products, are false and likely to mislead or deceive the public because a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled by Defendant's representations and omissions.

175.  Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and labeled/packaged Products to unwary consumers.

176.  Defendant's conduct directly and proximately caused and continues to cause substantial injury to Plaintiff and the Class.

177.  Plaintiff and the Class have suffered injury-in-fact and sustained actual damages as a direct and proximate result of Defendant's violative representations, omissions, and practices, including but not limited to the economic harms described above in ¶¶ 79-92 above.

178.  Plaintiff and the Class have been aggrieved by Defendant's violative representations, omissions, and practices and their rights have been adversely affected and, therefore, Plaintiff(s) and the Class are entitled to injunctive and declaratory relief under California Business and Professions Code § 17200 *et seq.*

179.  Defendant's misrepresentations are ongoing such that declaratory or injunctive relief requiring Defendant to make only truthful statements in its marketing and labeling of the Products would its ongoing violations of California Business and Professions Code § 17200 *et seq.* and the ongoing harms caused by those violations.

180.  Plaintiff, individually and on behalf of the Class, seeks a declaration or declaratory judgment that Defendant's acts and practices have violated and continue to violate California Business and Professions Code § 17200 *et seq.*; an order enjoining Defendant to refrain from the acts and practices that have violated and continue to violate California Business and Professions Code § 17200 *et seq.*, including an order requiring Defendant to cease claiming in its   marketing and labeling of the Products that the Products provides any % DV for protein; attorney's fees and court costs; and any other statutory, legal, or equitable relief to which Plaintiff or Class members may be entitled.

## GLOBAL PRAYER FOR RELIEF

181.  WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant Protein Essentials, LLC:

    a. that this action be certified as a class action; that Plaintiff be appointed as class representative for the National Class and California Subclass; and that the undersigned be appointed as class counsel for the National Class and the Subclass;

    b. that the Court enter an order requiring Defendant to bear the costs of notification to the Class and members;

c. that the Court enter a declaration or declaratory judgment that Defendant's acts and practices have violated and continue to violate California law and the laws of the various states cited herein;

d. that the Court enter an order enjoining Defendant to refrain from the acts and practices described herein, including its marketing and labeling claims pertaining to the % DV of protein for the Products;

e. that the Court enter an order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and Subclass to restore to the Plaintiff and members of the Class and Subclass all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, in violation of laws, statutes or regulations, or one constituting unfair competition;

f. that the Court distribute monies via fluid recovery or *cy pres* where necessary to prevent Defendant from retaining the benefits of its wrongful conduct;

g. that the Court award statutory damages under California Business and Professions Code § 17200 *et seq.*;

h. actual damages including but not limited to compensatory, incidental, consequential, statutory, treble, and punitive damages amounts the Court or jury will determine, in accordance with applicable law;

i. attorney's fees and court costs, including all recoverable interest;

j. any other legal or equitable relief to which Plaintiff or the Class members or Subclass members may be entitled.

## DEMAND FOR JURY TRIAL

182.  Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

1  Date: January 29, 2020                    Respectfully submitted,

2
                                        By:  */s/ Ryan L. McBride*
3                                            Ryan L. McBride, Esq.
                                             Abbas Kazerounian, Esq.
4                                            **KAZEROUNI LAW GROUP, PLC**
                                             245 Fischer Ave., Unit D1
5                                            Costa Mesa, CA 92626
                                             Telephone: (800) 400-6808
6                                            Facsimile: (800) 520-5523

7

8                                            Matthew D. Schultz (PHV Forthcoming)
                                             Brenton Goodman (PHV Forthcoming)
9                                            **LEVIN, PAPANTONIO, THOMAS,**
                                             **MITCHELL, RAFFERTY &**
10                                           **PROCTOR, P.A.**
                                             316 South Baylen Street, Suite 600
11                                           Pensacola, California 32502
                                             Telephone: (850) 435-7140
12                                           Facsimile: (850) 436-6140
13

14                                           *Counsel for Plaintiff and the Proposed Class &*
                                             *Subclass*
15

16

17

18

19

20

21

22

23

24

25

26

27

28